Neil **BUCHANAN**, Clair Vogt, Bruno Menicucci, Anna Menicucci, and Menicucci Insurance Services, Inc., Appellants,

v.

Timothy J. **HENDERSON**, Trustee, Appellee.

No. CV–R–85–563–HDM.

United States District Court, D. Nevada.

Oct. 12, 1990.

and forty-six thousand four hundred and sixty-eight dollars ($5,646,468.00) and against Menicucci jointly and severally with Vogt and Buchanan for two million nine hundred and ninety-six thousand seven hundred and ninety-nine dollars ($2,996,-799.00) on the claim of breach of fiduciary duty. Judgment was entered in favor of Menicuccis on the alter ego and partnership theories. Judgment was entered against the Menicuccis for preferential transfer in the sum of ten thousand three hundred and ninety-eight dollars and seventy-four cents ($10,398.74) and against the corporate Menicuccis for preferential transfer in the sum of thirty thousand eight hundred and eighty dollars and five cents ($30,880.05). Judgment was further entered against Menicucci Insurance Services, Inc. subordinating its claim regarding the preferential transfers to the claims of other creditors.

## FACTS

Vogt and Buchanan met in 1978 and commenced a business relationship. Over a period of several years, Vogt would loan money to Buchanan to fund the operation of certain entities which consisted of approximately twenty-five (25) corporations in which Buchanan was the primary manager and Vogt became the sole stockholder. In most instances, stock was never issued for the corporations and the bankruptcy court determined that funds advanced by Vogt for such companies were loans, not capital investments, and, therefore, the companies were undercapitalized. Four of the five debtor companies were Vogt–Buchanan ventures in which the Menicuccis had no interest and were not officers, directors or shareholders. These companies were United Securities Systems, Inc. ("USS"), United Securities Systems Leasing, Inc. ("USSL"), United Emergency Services, Inc. ("UES"), and Leasco Financial Corporation ("LFC"). The record reflects that funds invested with USSL, directly or through Western World Funding, were used by some of these other companies, and while these facts may be relevant to the judgment against Vogt and Buchanan, they did not involve the Menicuccis.

Frank R. Petersen, Cal Hoover, Vivian Lynch, Hamilton & Lynch, Reno, Nev., for appellants.

Henderson & Nelson, Reno, Nev., for appellee.

## OPINION

McKIBBEN, District Judge.

## OVERVIEW

This is an appeal of a judgment entered by the bankruptcy court against Bruno Menicucci and Anna Menicucci and Menicucci Insurance Services, Inc. (hereinafter referred to as "the Menicuccis") and Neil Buchanan (hereinafter "Buchanan") and Clair Vogt (hereinafter "Vogt"). 52 B.R. 743. Judgment was entered against Vogt and Buchanan for five million six hundred

USSL was the security company utilizing closed circuit television equipment and other electronic equipment. This equipment was acquired and owned by USSL. Prior to 1981, USSL obtained financing from short-term investor loans which were administered by City Investment and Trust Co. The relationship with City Investment and Trust Co. was terminated in 1982. Prior to terminating the relationship, Buchanan had met with Menicucci in order to secure insurance for USSL and USS. Menicucci is a former mayor of Reno and was a Reno city councilman for several years. He was also an insurance broker in Reno. During the course of processing and handling insurance claims for Buchanan, Menicucci and Buchanan discussed a dormant corporation, Western World Funding, Inc., ("WWF") which the Menicuccis had formed sometime earlier. Buchanan suggested to Menicucci the possibility of the Menicuccis participating with them through WWF and obtaining investor capital for USSL. Menicucci would remain as the head of WWF to attract new investors. No stock had ever been issued in WWF.

Prior to undertaking this venture, Menicucci investigated Buchanan and Vogt by talking with Buchanan's and Vogt's banker and attorney. After determining the net worth of Vogt and USSL, Menicucci agreed to permit WWF to be used as a conduit for investor financing for USSL. Menicuccis remained in the position of officers and directors of WWF. WWF was then used to obtain investor loans for USSL. Although there is some conflict in the record, the obligation to repay the loans and to pay interest thereon was USSL's and promissory notes representing the obligations ran directly from USSL to the investor lender.

Investor accounts, after they were established, were handled by USSL directly through employees retained by Buchanan. All communications concerning investors were handled by an employee of Buchanan's. Investors were solicited by printed advertisements offering high rates of returns. These advertisements featured the involvement of Menicucci as president of WWF. Investors would make loans directly to USSL or to USSL through WWF.

When funds were invested with WWF, the investor was shown a rate card which showed the different interest rates, depending on the term of the investment. They would receive a receipt for the loan and a promissory note. The promissory note form was the same for all investments, whether made through WWF or directly to USSL, and provided that principal and interest would be paid by USSL. None of the documents showed any obligation for payment of principal and interest on the part of WWF. These notes were the only evidence of indebtedness as far as the investors were concerned.

The procedure for handling the investor loans was that at the end of each day, funds received by WWF would be deposited into WWF accounts and a check for ninety-five percent (95%) of that sum would be made payable to USSL, with five percent (5%) being retained by WWF to pay for overhead and expenses. Checks transferring the loan funds from WWF to USSL were signed by Menicucci and Vogt and deposited into USSL accounts every day. When Menicucci would attempt to secure information as to where loan funds were being transferred to USSL and for what purpose they were being invested and distributed, he was advised by Buchanan that they were being invested in short-term bank loans, leases and leasing blocks, but Buchanan refused to provide Menicucci with any additional information. During this period, Menicucci inspected warehouse facilities of USSL and determined that there were substantial quantities of equipment on the premises.

During the latter part of 1981 and early 1982, Menicucci and Buchanan began having conflicts when Menicucci objected to his lack of control, and he notified Buchanan and Vogt that he either would have to have more direct knowledge and authority or he would terminate the relationship. In late March, Menicucci again expressed his concerns and advised that he would be resigning in April if matters were not resolved. On April 30, 1982, Menicucci resigned. The record also reflects that the Menicuccis invested individually and received promissory

notes and interest payments from USSL and WWF.

Vogt and Buchanan manipulated the funds coming into USSL by intercompany transfers which were documented by notations on the checks and deposit slips. They made payments to themselves and on their own behalf for their own use, which were again documented only by notations on the checks. None of these activities involved WWF or Menicucci. The Menicuccis received no compensation for services performed by Menicucci for WWF, nor was there any form of diversion of corporate funds to the Menicuccis personally. The accounts of WWF were properly maintained, and all obligations of WWF were paid and accounted for. No funds were transferred to any of the Menicuccis other than for insurance payments and repayments of interest and principal on actual investments made by the Menicuccis.

In this proceeding, the bankruptcy judge imposed liability on the Menicuccis individually on the theory of breach of fiduciary duty, finding that the Menicuccis failed to discover the wrongdoing of Vogt and Buchanan, after first concluding that the companies were insolvent. Liability for preferences was based on the theory of knowledge of insolvency and insider status. Equitable subordination was imposed on the theory of breach of fiduciary duty giving rise to the liability for investor loans. The Menicuccis' liability was calculated on the basis of unpaid investor loans.

Liability was imposed on Vogt and Buchanan for breach of fiduciary duty, fraudulent transfer, preferential transfers, and conversion. The bankruptcy court found a partnership relationship existed between Vogt and Buchanan and also applied the doctrine of alter ego in finding liability.

## STANDARD OF REVIEW

This court reviews the bankruptcy court's findings of fact using the clearly erroneous standard and its conclusions of law *de novo*. *Probasco v. Eads (In re Probasco)*, 839 F.2d 1352, 1353–54 (9th Cir. 1988). For the reasons stated in this court's order of June 30, 1989, the court

will review all non-core issues *de novo*. 28 U.S.C. § 157(c)(1)–(2) (1988). These non-core issues are the fiduciary duty, alter ego and partnership claims.

## JURISDICTION OF THE BANKRUPTCY COURT TO ADJUDICATE THE PRIMARY CLAIMS

The appellants all assert that they did not consent to the reference of the non-core related proceedings to the bankruptcy judge under 28 U.S.C. § 157(c)(2), and, therefore, the court could only propose findings and conclusions pursuant to 28 U.S.C. § 157(c)(1). This court, in its order of June 30, 1989, dealt with the issue of consent and concluded that the non-core issues would be reviewed *de novo*. Therefore, the bankruptcy court had jurisdiction to adjudicate the claims in the manner in which they were adjudicated.

## STANDING

Appellants Menicuccis and Buchanan and Vogt contend the trustee did not have standing to maintain this action. The bankruptcy judge held that the trustee had the power under 11 U.S.C. §§ 541(a), 544(a) (1988) to maintain this action for breach of fiduciary duty and to establish alter ego liability against Buchanan and Vogt.

In *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988), the Ninth Circuit Court of Appeals held that even when various creditors (investors in "Ponzi" scheme) had assigned their claims to the trustee, the trustee had no standing to proceed on an alter ego claim on behalf of the creditors of the bankrupt estates. *Id.* at 667. In so holding, the court applied the doctrine set forth in *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) where the United States Supreme Court held that a reorganization trustee under Chapter X of the old bankruptcy act had no standing to assert, on behalf of the holders of the debtors' debentures, claims of misconduct against a third party. In *Williams*, the court agreed with the holding in *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222 (8th Cir.), *cert.*

*denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987), that *"no* trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee as in the present case, has the power under ... the Code to assert general causes of action, such as the alter ego claim, on behalf of the bankrupt estate's creditors." 816 F.2d at 1228. Therefore, the bankruptcy court erred in holding that the trustee had standing under § 544(a) to assert an alter ego claim.

■ Alternatively, the bankruptcy court found that the bankruptcy trustee had standing under 11 U.S.C. § 541(a)(1) (1988), which provides:

(a) The commencement of a case under section 301, 302, or 303 of this title [11 U.S.C. § 301, 302, or 303] creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held: (1) except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Here, the trustee contends that among the items that are part of the bankrupt's estate are choses of action for breach of fiduciary duty, and because such actions are part of the estate, the trustee had standing to assert this claim. The law is fairly well settled that a chose of action for breach of fiduciary duty belongs to the corporation. It is normally asserted by stockholders in the form of a derivative suit, but it is an action that belongs to the corporation itself as the Supreme Court held in *Pepper v. Litton,*

While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee. For that standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation-creditors as well as stockholders.

308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939).

Therefore, the bankruptcy court properly concluded that a trustee can assert an action for breach of fiduciary duty.

## THE SOLVENCY ISSUE AS TO WESTERN WORLD FUNDING

■ The Menicucci appellants contend the bankruptcy judge erred in finding that WWF was insolvent. The bankruptcy court held that the loan obligations to the investors were debts of WWF and that the loan proceeds were assets or property of WWF. The Menicuccis contend there is no evidence in the record that the loans were made to WWF because all of the promissory notes received by investors were signed by USSL.

The bankruptcy judge concluded that WWF was insolvent and therefore liable to investors based on three theories:

First, that WWF was not a separate corporation and that Menicuccis' liability could be based on their participation in the total "squandering of funds."

Second, that WWF was rendered insolvent when it received its first check because it was a principal obligor to the promissory notes issued and had no assets to offset these liabilities.

Third, that even if WWF intended to be an agent of USSL it was nevertheless liable on the theory of agency as an undisclosed or partially disclosed principal.

There appears to be no evidence in the record from which the bankruptcy court could have concluded that WWF was the principal obligor on the promissory notes. The loans in this case were not made to WWF but were made through WWF as a collecting agent to USSL. The indebtedness was reflected by a promissory note in which the investor was the payee and USSL was the maker. This was clearly set forth on the face of the notes. To the extent collateral was given to secure the notes, it was in the form of assignments or partial assignments of leases belonging to USSL. There is no evidence that any of these assets belonged to WWF. In fact, the bankruptcy court found that the Meni-

cuccis did not profit from the business and that the only funds they received were from the repayment of loans. Therefore, the court concludes the bankruptcy court erred in determining that WWF was the principal obligor on the promissory notes.

■ The bankruptcy court also determined that WWF was insolvent because its insolvency was derivative of the insolvency of other corporations owned by Buchanan and Vogt and Menicuccis' liability is based on their participation in the "total squandering of funds." While the evidence is clear that there existed unity of interest in ownership between Buchanan and Vogt with respect to USS, USSL, EUS and LFC, this court has already concluded that the trustee lacks standing to assert an alter ego claim on behalf of the creditors and, accordingly, the bankruptcy judge's findings of insolvency based upon an alter ego theory cannot be sustained.

■ Finally, the bankruptcy court concluded that WWF was insolvent on the theory of undisclosed or partially disclosed principal. In this connection, Menicuccis contend that WWF was merely an agent for USSL and, therefore, cannot be held liable for USSL's obligations. In order for an agent who negotiates a contract on behalf of his principal to avoid personal liability, he must disclose not only his agency but also the identity of his principal. *Myers–Lieber Sign Co. v. Weirich*, 2 Ariz. App. 534, 536, 410 P.2d 491, 493 (1966). Where the other party has actual knowledge of the agent/principal relationship or has reason to know about it, the agent will be relieved from liability whether he himself makes the disclosure or the other party acquires the knowledge from some other source. *Lentz Plumbing Co. v. Fee*, 235 Kan. 266, 679 P.2d 736, 742–43 (1984).

■ Here, the evidence established that investors normally went to WWF's offices to make their investments. They wrote checks and received the promissory note reflecting USSL as the maker. In those instances where the investors inquired, they were advised that USSL was the obligor under the notes. There were instances in which the investor did not receive information regarding the principal/agent relationship until they received their promissory notes in the mail after the transaction had been completed. In a number of cases, the investors renewed or "rolled over" their investments. In those cases, the investor already had the promissory note showing USSL as the maker when they elected to reinvest their money. When a person continues to do business with the principal having received checks or other correspondence from the principal, such person is on notice of the agent/principal relationship, and the agent is, therefore, relieved of any liability. *Potter v. Chaney*, 290 S.W.2d 44 (Ky.1956); *Lentz Plumbing Co.*, 679 P.2d at 743.

The bankruptcy court made no finding, and there was no evidence to support a finding, of fraud or misrepresentation with respect to the activities of the Menicuccis or that the Menicuccis profited from the business. In fact, the bankruptcy court found there was no such conduct on the part of the Menicuccis and that the Menicuccis also invested their funds with USSL. Further, there was no evidence of any guaranty or indemnity agreement running from WWF to any of the investors. A party cannot be obligated for the debt of another absent an express agreement assuming such liability. *Wyatt v. Bowers*, 103 Nev. 593, 595, 747 P.2d 881, 882 (1987). Therefore, the bankruptcy court's finding of direct personal liability on Menicuccis' part is not supported by the evidence. There is no evidence at all that the loans were made to WWF or that WWF was obligated in any manner thereon or assumed the obligation as a surety in connection with the loans. WWF was a separate and distinct legal entity from the other debtor corporations. What WWF did do was advertise for investors, accept funds on behalf of USSL, retain a five percent (5%) commission which was used strictly for advertising, and turn the funds over to USSL at the end of each day.

■ Where an agent enters into a contract on behalf of a disclosed principal, the agent does not become a party to the contract and is not liable thereon. *Seigworth*

*v. State,* 91 Nev. 536, 539, 539 P.2d 464, 466 (1975). *See also Prigge v. South Seventh Realty,* 97 Nev. 640, 641, 637 P.2d 1222, 1223 (1981). To the extent loans were repaid, or interest was paid on the loans, it was paid by USSL. Had there been evidence that investors were fraudulently induced into believing that WWF was, or would be, liable on the notes, then liability would clearly lie in favor of the investors against WWF and the Menicuccis. There is no evidence in the record which supports a finding of fraud.

▉ Under 11 U.S.C. § 101(31) (1988), insolvency means "with reference to an entity other than a partnership ... financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation...." The liabilities of WWF were its operating expenses, and the assets of WWF were the five percent (5%) it retained for purposes of advertising. In short, the evidence established that WWF was a collecting and disbursing agent for USSL. The obligations were those of USSL, and WWF had no claim to any funds or property right in such funds. USSL was clearly insolvent, but the Menicuccis had no control or legal relationship to USSL. Therefore, the court concludes the bankruptcy court erred in finding WWF was insolvent. The investor loans were not claims against the estate. Since WWF was not insolvent, the investors were not its creditors, and the Menicuccis are not obligated to repay the investors for the failure of USSL to repay the sums owing under the promissory notes.

## BREACH OF FIDUCIARY DUTY

▉ The bankruptcy court held the Menicuccis were not the alter ego of the debtor corporations and did not exercise dominion and control over the debtor corporations and were not in a partnership with the defendants, Vogt and Buchanan. Liability was imposed on the Menicuccis for that portion of the unpaid investor loans which were paid through WWF on the theory that the Menicuccis breached fiduciary duties owing to WWF and, because WWF was insolvent, also to its creditors. Because this court has determined that WWF was not insolvent, the Menicuccis, even if they did breach fiduciary duties to WWF, have no liability to the creditors. Nevertheless, to fully consider the issues raised on appeal, the court will address the breach of fiduciary duty issue.

Essentially, the bankruptcy court determined that the Menicuccis breached fiduciary duties as a consequence of the transfer of assets which consisted of the loan proceeds from WWF to USSL without securing adequate assurances that such funds would be, and were being, properly utilized by USSL. In addition, the bankruptcy court determined that there was a failure on the part of the Menicuccis to maintain proper corporate formalities, to properly maintain the books and records and to file tax returns. The court reviews this issue *de novo.*

▉ A director's fiduciary obligation to a corporation and its shareholders has two prongs, generally characterized as the duty of care and the duty of loyalty. *Norlin Corp. v. Rooney, Pace, Inc.,* 744 F.2d 255, 264 (2d Cir.1984). Two Nevada statutes outline a director's duty with respect to his duty of care. Nev.Rev.Stat. § 78.140(1) provides in pertinent part that: "[d]irectors and officers shall exercise their powers in good faith and with a view to the interests of the corporation." Section 78.650(1)(b) discusses those cases wherein a stockholder can obtain an injunction against a corporation or obtain the appointment of a receiver if "its trustees or directors have been guilty of fraud or collusion or gross mismanagement in the conduct or control of its affairs." In *Briggs v. Spaulding,* 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662 (1891), the United States Supreme Court outlined the standard as follows:

It is perhaps unnecessary to attempt to define with precision the degree of care and prudence which directors must exercise in the performance of their duties. The degree of care required depends upon the subject to which it is to be applied, and each case has to be determined in view of all the circumstances. They are not insurers of the fidelity of

the agents whom they have appointed, who are not their agents but the agents of the corporation; and they cannot be held responsible for losses resulting from the wrongful acts or omissions of other directors or agents, unless the loss is a consequence of their own neglect of duty, either for failure to supervise the business with attention or in neglecting to use proper care in the appointment of agents....

In any view the degree of care to which these [directors] were bound is that which ordinarily prudent and diligent men would exercise under similar circumstances....

141 U.S. at 147, 152, 11 S.Ct. at 929, 931.

██ A manager/director may be protected by the "Business Judgment Rule." This rule bars judicial inquiry into actions of corporate directors which are taken in good faith and in the exercise of honest judgment. *Norlin*, 744 F.2d at 264 (*quoting Auerbach v. Bennett*, 47 N.Y.2d 619, 629, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979)). The Business Judgment Rule, however, does not apply in cases in which the corporate decision lacks a business purpose, is tainted by conflict of interest, or is so egregious as to amount to a no-win situation or results from obvious and prolonged failure to exercise oversight or supervision. *Joy v. North*, 692 F.2d 880, 886 (2d Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983).

The evidence in this case establishes that the Menicuccis failed to exercise the degree of care required to insulate them from liability for breach of fiduciary duty and they are not protected under the Business Judgment Rule.

While the record does disclose Bruno Menicucci made certain inquiries of the bank where the accounts were maintained and an inspection of the USSL warehouse, he obtained no information from the bank regarding what was occurring with the money after it was deposited. He did not see any bank notes or leasing blocks where the money was supposedly being invested. WWF never had any formal corporate meetings. None of the leases, bank notes, or leasing blocks were ever assigned to the investors, nor did Bruno Menicucci have any idea of what other investment companies were paying in interest on similar investments.

The defendants, Buchanan, Vogt, and Bruno and Anna Menicucci, failed to maintain adequate bookkeeping, accounting, and other necessary records for WWF and LFC respectively. The record also discloses that the appellants failed to maintain general ledgers and cash disbursement journals and failed to prepare, or have prepared, proper financial statements for WWF and LFC respectively. They failed to prepare appropriate budgets, financial projections, or other projections necessary for companies dealing in such substantial sums of money. Significantly, the Menicuccis caused transfers to occur from WWF to LFC without knowing where the funds were to be invested and without adequate assurances regarding the safety of the funds. When Bruno Menicucci confronted Neil Buchanan about the transfers, Buchanan failed to advise Menicucci of the nature of the investments. Under such circumstances, Menicucci had an obligation to make further inquiry. Instead, the Menicuccis continued to transfer investor funds to USSL without demanding to see financial statements or other financial information regarding USSL.

While the manner in which Buchanan was diverting the funds was difficult to detect, as evidenced by the substantial problems the accountant experienced in attempting to determine the nature and extent of the diversion of funds, a reasonably prudent person would have made more substantial inquiries than did Menicucci during the time investor funds were being transferred from WWF to LFC. There was never any documentation indicating how the intercompany transfers would be repaid or if they would be repaid. In addition, the record reflects that WWF never intended to make a profit and that the five percent (5%) paid to WWF from investors was retained by WWF to cover expenses. The remainder of the funds were transferred to USSL.

The court concludes the Menicuccis failed to use that degree of care and prudence in the management and administration of the affairs of WWF which they should have exercised in the performance of their duties.

■ The evidence is clear that both Vogt and Buchanan breached their fiduciary duties to the several corporations over which they had control. This is reflected by the substantial amount of self-dealing in which each of them engaged with respect to the assets of the corporations. Buchanan was not to receive any salary during the time period in question in this case, and thus he diverted in excess of one hundred thousand dollars ($100,000.00) for his own purposes. Vogt also was not to receive a salary, and yet she received in excess of one million dollars ($1,000,000.00) from the corporations, and after subtracting the amount of her advancements to the corporations, she converted in excess of two hundred and fifty thousand dollars ($250,-000.00) of corporate assets. Both Vogt and Buchanan had actual knowledge of the other's practice of using corporate assets for personal use. Vogt and Buchanan used corporate funds to secure labor, services, and merchandise for Buchanan's wife and daughter. In addition, Buchanan and Vogt failed to maintain accurate and proper payroll records for the debtor corporations, failed to acquire necessary contractor's license for the corporations, induced investors to loan money to debtor companies with knowledge that the companies were not making a profit, failed to maintain accurate bookkeeping records, and failed to establish internal controls with respect to purchases for the debtor companies, including, but not limited to, purchase order systems and voucher systems. In addition, Buchanan and Vogt intermingled corporate records and incurred high overdraft charges in the bank accounts. There is little question that Vogt and Buchanan mismanaged the affairs and operations of the debtor corporations. Buchanan and Vogt willfully diverted funds from the corporations and clearly breached their fiduciary duties. Therefore, the court finds the Menicuccis and Neil Buchanan and Clair Vogt breached their fiduciary duties.

## EQUITABLE SUBORDINATION

■ The bankruptcy court held that the claims of Menicucci Insurance Services, Inc. in the estate should be equitably subordinated. 11 U.S.C. § 510(c) permits equitable subordination when (1) the claimant has engaged in some type of inequitable conduct; (2) the misconduct has resulted in injury to creditors or conferred an unfair advantage on the claimant; and (3) equitable subordination is not inconsistent with the provisions of the bankruptcy code. *Machinery Rental, Inc. v. Herpel (In re Multiponics)*, 622 F.2d 709, 713 (5th Cir. 1980). Based upon the bankruptcy court's and this court's finding that the Menicuccis breached their fiduciary duties in this case, the court concludes the bankruptcy judge did not err in determining that the Menicuccis engaged in inequitable conduct which resulted in injury to the creditors. Therefore, Menicuccis' claim should be equitably subordinated.

## PREFERENCES

■ The bankruptcy court held that the Menicuccis received preferences pursuant to 11 U.S.C. § 547 in the amount of ten thousand three hundred and ninety-eight dollars and seventy-four cents ($10,398.74). The court further determined that Menicucci Insurance Services received preferences in the amount of thirty thousand eight hundred and eighty dollars and five cents ($30,-880.05). The bankruptcy judge specifically found that these transfers had been made for the Menicuccis' benefit; that the transfers were made on an account of an antecedent debt; that the monies were owed by the debtor; that the transfers were made when the debtors were insolvent; and that the transfers were made within ninety (90) days of the debtors' filing a petition in bankruptcy. The bankruptcy court found, therefore, that the Menicuccis received more than they otherwise would have. Since this court has determined that WWF was not insolvent, the court concludes the bankruptcy court erred in holding that in-

terest and principal payments to the Menicuccis on their personal investments were preferences under 11 U.S.C. § 547. There is no evidence in the record to support the conclusion that the Menicuccis were "insiders" as to USSL. The payments of the Menicuccis were made in the ordinary course of business in the same manner as similar payments made to other loan investors, and the Menicuccis invested in a manner similar to the investment made by the other loan investors. There is nothing in the record to suggest that any of the payments were outside the ordinary course of business of both the investors and the companies with reference to such loans. Further, there is no evidence to suggest the Menicuccis had any prior notice of the insolvency of USSL or that the Menicuccis were in any way involved in the "Ponzi" scheme.

### FRAUDULENT TRANSFERS— PREFERENTIAL TRANSFERS AND CONVERSION

The bankruptcy court held that Vogt and Buchanan were liable for fraudulent transfers pursuant to 11 U.S.C. § 548(a)(2)(A)–(B)(i)–(ii), concluding that Vogt was liable for two hundred sixty-three thousand one hundred and forty-one dollars and sixty-five cents ($263,141.65) in fraudulent transfers and Buchanan was liable for forty-two thousand seven dollars and forty-eight cents ($42,007.48) in fraudulent transfers. The bankruptcy judge correctly held that USSL was insolvent on the date of the transactions. Therefore, the contentions of Vogt and Buchanan are meritless.

■ On the issue of preferences, the bankruptcy court found that Vogt had received a preferential transfer in the amount of four hundred ninety-three thousand four hundred and fourteen dollars and forty-four cents ($493,414.44) pursuant to 11 U.S.C. § 547. There is substantial evidence in the record that Vogt knew how the debtor corporations were organized and operated and that she was an "insider" as defined by 11 U.S.C. § 101(30) and that she had reasonable cause to believe that the debtor was insolvent.

The bankruptcy court found Vogt liable for conversion in the amount of two hundred and sixty-three thousand one hundred forty-one dollars and sixty-five cents ($263,-141.65). The court found Buchanan liable for forty-two thousand and seven dollars and forty-eight cents ($42,007.48) in fraudulent transfers and liable for one hundred and twenty-four thousand six hundred and one dollars and seventy-eight cents ($124,-601.78) for conversion. Appellant's contention that the statute of limitations is a bar to this finding is without merit.

### PARTNERSHIP BETWEEN VOGT AND BUCHANAN

■ Appellants Vogt and Buchanan contend the bankruptcy court erred in finding a partnership existed between Vogt and Buchanan. The record reflects that both Vogt and Buchanan had an agreement to share the profits from the corporations. The receipt of a share of profits is prima facie evidence of a partnership. Nev.Rev. Stat. 87.070(4) (1987). Neither Vogt nor Buchanan rebutted Plaintiff's prima facie case establishing a partnership. In fact, Buchanan testified that he was a business partner with Vogt in all of the ventures. Vogt testified that their arrangement was to share the profits from the corporations. All of the funds that Vogt contributed to the debtor companies were in the form of loans. Neither Vogt nor Buchanan took a salary for their services, but instead took monies from the debtor companies at such times as they deemed appropriate. The evidence in this case establishes that Vogt and Buchanan had a present agreement and intent to share profits whenever such profits were generated and, in fact, referred to each other as partners.

Accordingly, this court concludes, as did the bankruptcy court, that a partnership, upon which liability can be imposed, existed between Vogt and Buchanan with respect to the overall relationship between the parties.

All other issues raised by the appellants Buchanan and Vogt are without merit.

Therefore, the judgment of the bankruptcy court is AFFIRMED as to Neil Buchan-

an and Clair Vogt. The judgment of the bankruptcy court is AFFIRMED as to that portion of the judgment which equitably subordinates the claim of Menicucci Insurance Services, Inc. to all other allowed claims in the estate. The judgment is REVERSED as to Bruno Menicucci and Anna Menicucci.