Timothy J. HENDERSON, Trustee, Plaintiff–Appellant,

v.

Neil BUCHANAN, Defendant,

and

Bruno Menicucci, Anna Menicucci, and Menicucci Insurance Services, Inc., Defendants–Appellees.

No. 90–16656.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 21, 1992.

Decided Feb. 11, 1993.

---

Lee S. Molof and Robert C. Vohl, Henderson & Nelson, Reno, NV, for plaintiff-appellant.

Vivian E. Lynch, Hamilton & Lynch, Reno, NV, for defendants-appellees.

Before CANBY, REINHARDT, and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

A trustee representing five corporate debtors filed an adversary proceeding in bankruptcy against various individual and corporate defendants. The bankruptcy court found in favor of the trustee and entered judgment against the individual defendants and one corporate defendant. The defendants appealed to the district court, which reversed part of the judgment against two of the individual defendants and the corporate defendant. The trustee has timely appealed, arguing, *inter alia,* that the district court erred by finding that the two individual defendants were not liable for breaching their fiduciary duty to one of the corporate debtors. We reverse and remand.

## FACTS AND PRIOR PROCEEDINGS

The underlying facts in this case have already been set forth at some length in both the bankruptcy court's published decision, *see Henderson v. Buchanan (In re Western World Funding, Inc.),* 52 B.R. 743, 753–62 (Bankr.D.Nev.1985), and in the district court's published opinion, *see Buchanan v. Henderson,* 131 B.R. 859, 862–64 (D.Nev.1990). Rather than recapitulate the details of facts that are not in serious dispute, anyway, we confine ourselves to a summary of only the salient points of this case.

Neil Buchanan ("Buchanan") and Clair Vogt ("Vogt") were business partners in some twenty-five companies that Buchanan managed and Vogt funded. Among these companies were four of the five debtor corporations involved in this action, *viz.*, United Securities Systems, Inc. ("USS"), United Securities Systems Leasing, Inc. ("USSL"), United Emergency Services, Inc. ("UES"), and Leasco Financial Corporation ("LFC"). The fifth debtor company, Western World Funding, Inc. ("WWF"), was owned and operated by Bruno Menicucci ("Menicucci"), an insurance broker and former mayor and city councilman of Reno, Nevada, and his wife, Anna (together, "the Menicuccis").

In late 1981 Buchanan went to Menicucci's place of business, Menicucci Insurance Services, Inc. ("MIS"), to purchase insurance for USS and USSL. During the course of his visit, Buchanan discussed the possibility of using WWF, at that time a dormant corporation, as a conduit for obtaining investor capital for USSL.

Under the terms of the agreement he eventually reached with Buchanan and Vogt, Menicucci as president of WWF solicited investors by offering them high rates of return on money deposited with WWF for periods of time ranging between thirty days and nine months.[1] At the end of each business day Menicucci deposited into WWF's bank account those funds received from investors and wrote a check to USSL for 95% of the day's receipts, retaining the other 5% for WWF's expenses. USSL then forwarded its own promissory notes to the investors and "invested" their money. In fact, the whole operation amounted to a Ponzi scheme.

As the result of disagreements with Buchanan and Vogt, Menicucci withdrew from the WWF–USSL venture in April 1982 and, less than two months later, filed a Chapter 11 petition in bankruptcy on behalf of WWF. USS, USSL, UES, and LFC soon followed suit. In July 1982 the bankruptcy court appointed Timothy Henderson ("trustee") to serve as trustee for all five entities. In April 1983 the Chapter 11 proceedings were consolidated and converted to Chapter 7.

Meanwhile, the trustee filed an adversary proceeding in August 1982 against Buchanan, Vogt, the Menicuccis, and MIS, *inter alios*, asserting such claims as breach of fiduciary duty, conversion of corporate assets, and receipt of preferential transfers. In September 1985 the bankruptcy court entered judgment against Buchanan and Vogt for more than $5.6 million, and the Menicuccis jointly and severally with Buchanan and Vogt for nearly $3 million, on the breach of fiduciary duty claim. The bankruptcy court also entered judgment against Buchanan, Vogt, the Menicuccis, and MIS on other claims, finding several transfers to have been preferential and/or fraudulent.

Buchanan, Vogt, the Menicuccis, and MIS appealed to the district court. Although it affirmed the bankruptcy court judgment in most respects, the district court reversed that portion of the judgment finding the Menicuccis liable for nearly $3 million on the breach of fiduciary duty claim and for more than $10,000 for preferential transfers. The district court also reversed that portion of the bankruptcy court's judgment against MIS for nearly $31,000 in preferential transfers. As noted, the trustee has timely appealed the district court's decision.[2]

## JURISDICTION AND REVIEW

 This is an appeal from a final judgment of the district court reviewing a decision of the bankruptcy court. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d) and, because we are in as good a position as the district court to examine the bankruptcy court's decision, we review the latter's factual findings for clear error and the district court's legal conclusions *de novo*. *See BFP v. Imperial*

---

**1.** Although it is not clear that Anna Menicucci directly solicited investors herself, the record shows that she served as WWF's vice-president.

**2.** Vogt reportedly died during the pendency of the appeal to the district court and Buchanan is not a party to this appeal.

*Sav. & Loan Ass'n (In re BFP)*, 974 F.2d 1144, 1146 (9th Cir.1992). With respect to the breach of fiduciary duty claim, however, we treat the district court's *de novo* examination thereof as if it were a review of a magistrate judge's decision under Fed. R.Civ.P. 72(b). *See Castro v. Perez (In re Castro)*, 919 F.2d 107, 108 (9th Cir.1990) (per curiam) (review of noncore related proceedings under 28 U.S.C. § 157(c)). *Cf. Carter v. McCarthy*, 806 F.2d 1373, 1375 (9th Cir.1986) (clearly erroneous standard applies to appellate court's review of district court's *de novo* examination of magistrate judge's recommended findings), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987).

## ANALYSIS

The gist of the trustee's challenge to the district court's rulings is that the bankruptcy court was correct in finding that (1) the Menicuccis breached their fiduciary duty to WWF by rendering the company insolvent, and (2) the Menicuccis were liable for $10,398.74, and MIS for $30,880.05, for preferential transfers. We discuss each argument in turn.

### I. *Breach of Fiduciary Duty Claim*

■ The trustee's first contention is that the Menicuccis breached their duty of care and loyalty to WWF by rendering it insolvent when they paid out 95% of WWF's deposits to USSL. In support of this argument the trustee contends that WWF was a principal obligor with USSL on the investors' loans, that WWF acted as an agent for an undisclosed principal, *viz.*, USSL, and that the debtor companies were alter egos of each other.

With respect to the first two points, the bankruptcy court concluded from the evidence that WWF was either a principal obligor with USSL on the investors' loans or, in the alternative, that WWF acted as an agent of its undisclosed principal, USSL. *In re Western World Funding, Inc.*, 52

B.R. at 760, 769. The district court rejected this ruling, finding "no evidence in the record from which the bankruptcy court could have concluded that WWF was the principal obligor on the promissory notes" and that the investors knew that USSL, not WWF, was the maker of the promissory notes. *Buchanan v. Henderson*, 131 B.R. at 865, 866. We disagree with the district court's reading of the record.

WWF's advertisements, including a letter from Menicucci to potential investors, and WWF's rate sheet, all contained explicit promises from WWF to pay investors specific rates of interest over stipulated periods of time. These documents also bore WWF's logo and address, and listed Menicucci as President. More specifically, WWF's so-called "origination document" directed the individual investor to retain a copy thereof and to return the original to WWF, which WWF officials then signed to verify receipt by WWF and to show that the individual client had been "Accepted for investment." Nowhere in any of these documents, however, is there any mention—much less identification—of USSL or any entity other than WWF.[3]

In light of these undisputed facts, we deem clearly erroneous the district court's finding that there was "no evidence in the record from which the bankruptcy court could have concluded that WWF was the principal obligor on the promissory notes." To the contrary, the evidence clearly supports the conclusion that the origination documents constituted contracts between WWF and the investors. *See D'Angelo v. Gardner*, 107 Nev. 704, 744–45, 819 P.2d 206, 233 (1991) (essential elements of contract include offer, acceptance, and bargained for consideration) (Steffens and Young, JJ, dissenting); *In re Estate of Kern*, 107 Nev. 988, 991, 823 P.2d 275, 276–77 (1991) (additional elements of contract include adequate indication of such material terms as subject matter, price, and payment). Having guaranteed the specific performance of any paper assigned to se-

---

**3.** For example, the WWF letter provided to potential investors by Menicucci referred to "guaranteed rate[s] in a secure environment" and used the term "we" five times, including the statement, "[W]e guarantee the specific performance of any paper assigned to secure your investment," yet nowhere was any company other than WWF mentioned.

cure its investors' money, WWF was liable thereon as a principal obligor.[4] *See Investors of Nevada Realty, Inc. v. Nevada State Bank,* 98 Nev. 33, 34, 639 P.2d 554, 555 (1982) (one who promises to pay the debt or perform the obligation of another is a principal obligor with respect to the promisee). From this it necessarily follows that, when the Menicuccis transferred 95% of WWF's assets to USSL, they breached their fiduciary duty to WWF by rendering it insolvent.

Because of our ruling on this point, we need not and do not discuss the merits of the arguments pertaining to WWF's status as the agent of an undisclosed principal or as the alter ego of any of the other debtor companies.

## II. *Preferential Transfer Claims*

The Menicuccis concede that the district court erred in suggesting that the insolvency of WWF, rather than that of USSL, was the controlling factor. Although the Menicuccis received the funds from WWF, they acknowledge that WWF was merely disbursing the funds for USSL. Neither party disputes the insolvency of USSL, the transferor.

█ The district court also erred in relying on the facts that the Menicuccis were not "insiders" and that they had no reasonable cause to believe that USSL was insolvent. Because all of the disputed payments to the Menicuccis and MIS were made within ninety days before WWF and the Buchanan–Vogt companies filed their petitions, insider status and knowledge of insolvency are not necessary to establish that the transfers were avoidable. *See* 11 U.S.C. § 547(b)(4)(B).

█ The only remaining question is whether the payments were made "in the ordinary course of business" within the meaning of the exception contained in section 547(c)(2). To fit within that exception, transfers must be made in the debtor's ordinary course of business. *Graulty v. Brooks (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.),* 819 F.2d 214, 217 (9th Cir.1987). In *Graulty,* this court concluded that a Ponzi scheme is not a business, and that transfers related to the scheme are not within the "ordinary course of business." *Id.* at 216–17; *accord Danning v. Bozek (In re Bullion Reserve of North America),* 836 F.2d 1214, 1219 (9th Cir.), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). The Menicuccis do not contest the conclusion that Buchanan and Vogt operated USSL as a Ponzi scheme. The payments to the Menicuccis and to MIS therefore could not have been made in the ordinary course of business.

Accordingly, we must reverse the district court's reversal of the bankruptcy court's decision holding the Menicuccis liable for $10,398.74 and MIS liable for $30,880.05 for preferential transfers.

## CONCLUSION

The decision of the district court is REVERSED with respect to its reversal of the bankruptcy court's rulings on the breach of fiduciary duty and preferential transfer claims and REMANDED for further proceedings consistent with the above.

---

**4.** The fact that we find no error with the district court's determination that the investors (regardless whether they appeared in person at WWF's place of business or simply mailed their investments to WWF) received promissory notes identifying USSL and not WWF as their maker is irrelevant to the issue at hand. Because the origination documents represented binding agreements between WWF and the individual investors, the investors' subsequent receipt of promissory notes from a third party in no way acted to relieve WWF of its obligations as guarantor of the USSL notes.