The ESTATE OF Sammy
G. DAILY, Plaintiff,

v.

TITLE GUARANTY ESCROW SERVICE, INC., a Hawaii corporation; Lilipuna Associates, a Hawaii limited partnership; Lilipuna Development Corporation, a Hawaii corporation; Lilipuna Venture, Inc., a Hawaii corporation; Michael C. Daily; Terri Daily Wilcox, fna Terri Lynn Daily; Kevin Thomas Shannon; Frank Blazek; Harvey Hee; Rania Michiyo Hee; Doe Corporations 1–50 and Doe Governmental Entities 1–50, Defendants.

Civ. No. 92–0404 DAE.

United States District Court,
D. Hawai'i.

Feb. 21, 1995.

Enver W. Painter, Jr., Painter & Luria, Honolulu, HI, for plaintiff.

Roy L. Anderson, Honolulu, HI, for defendants.

W. Thomas Fagan, Stuart T. Feeley, Jerold K. Guben, Reinwald O'Connor Marrack Hoskins & Playdon, Honolulu, HI, Curtis B. Ching, Office of the U.S. Trustee, Honolulu, HI, for Richard M. Kennedy, trustee.

*ORDER ADOPTING BANKRUPTCY JUDGE'S REPORT AND RECOMMENDATION; DISMISSING FIRST AMENDED COMPLAINT AS TO DEFENDANTS MICHAEL C. DAILY, TERRI DAILY WILCOX, AND LILIPUNA DEVELOPMENT CORPORATION; AND DISSOLVING PRELIMINARY INJUNCTION THIRTY DAYS AFTER ENTRY OF ORDER*

DAVID ALAN EZRA, District Judge.

After reviewing Plaintiff's objections and Defendants' response to those objections, the court ADOPTS the Bankruptcy Judge's Report & Recommendation, and GRANTS the motions to dismiss Plaintiff's First Amended Complaint, with prejudice, as to moving Defendants Michael C. Daily, Terri Daily Wilcox, and Lilipuna Development Corporation. The court further orders that the preliminary injunction enjoining distribution of escrow monies belonging to Lilipuna Development Corporation and Lilipuna Venture, Inc., shall be dissolved 30 days after entry of this order if Plaintiff does not obtain an emergency order from the Ninth Circuit continuing the injunction.

## BACKGROUND

On December 13, 1994, United States Bankruptcy Judge Lloyd King entered his Report and Recommendation on two motions by Defendants. Defendant Lilipuna Development Corp. (LDC) moved to dismiss Plaintiff's First Amended Complaint or, alternatively, for summary judgment.[1] Defendants Michael C. Daily and Terri Daily Wilcox also moved for dismissal or for partial summary judgment. Judge King recommended that Plaintiff's amended complaint be dismissed, with prejudice, as to the moving defendants, and also recommended dissolving an injunction enjoining the distribution of sales proceeds now held in an escrow account. On January 13, 1995, Plaintiff filed its objections to Judge King's Report and Recommendation. LDC filed a response to Plaintiff's objections on February 6, 1995.

## FACTS

This lawsuit centers on a dispute over entitlement to proceeds of the sale of real property formerly owned by Defendant Lilipuna Associates ("Lilipuna"), a Hawaii limited partnership.[2] Defendant Lilipuna Venture, Inc., (LVI) is the general partner. Defendant LDC is a limited partner. Lilipuna deposited into an escrow account the share of the sales proceeds allocated to LVI, as general partner, and LDC, as a limited partner. The sales proceeds are currently held by the escrow agent, Defendant Title Guaranty Escrow Services, Inc., ("Title Guaranty"), which has been sued only as a stakeholder. As of April 21, 1994, the escrow account held $334,505, with interest accruing.

While the named plaintiff is The Estate of Sammy G. Daily, the real plaintiff in this case, pursuant to 11 U.S.C. § 704(1), is Daily's bankruptcy trustee, Richard Kennedy. Daily, a well-known Hawaii real estate broker and developer, filed a voluntary petition for Chapter 11 reorganization on January 31,

1. The title of the amended complaint fails to name LDC as a party defendant. However, the parties clearly believe LDC is a defendant. LDC was named as a defendant in the original complaint, and recent pleadings following the amended complaint have added LDC to the title. To avoid confusion and unnecessary delay, the court will treat LDC as a properly named defendant.

2. The property, known as "Bayview Ridge" and located in Kaneohe, Oahu, was sold for approximately $1.3 million to a third party not involved in this litigation.

1985. The case was converted to a Chapter 7 liquidating bankruptcy on November 22, 1988, and Kennedy was appointed Chapter 7 trustee on January 6, 1989. The original complaint was filed on January 9, 1989. The amended complaint, which is the subject of these motions, was filed on February 2, 1994.

The original complaint alleged that LVI and LDC were mere "alter egos" of Sammy G. Daily ("Daily"), that the purported stock ownership of LVI and LDC by Daily's children was a legal fiction, and that as a result any distribution of sales proceeds by Lilipuna to LVI and LDC belonged to trustee Kennedy, as representative of Daily's bankruptcy estate. After five years of motions and appeals,[3] this court dismissed the original complaint with leave to amend. Dismissal was ordered, in accord with Bankruptcy Judge King's recommendations, because Hawaii state courts have not and are not expected to recognize "reverse alter ego" claims for relief.[4] See Proposed Report & Recommendation to the U.S. District Court, ("Report I") November 12, 1993, at 10–11. The complaint was also dismissed because it failed to name the shareholders of LDC and LVI as defendants, and as a result those shareholders had no opportunity to protect their shareholdings.

Most, if not all, of the shares of LDC and LVI are now owned by Daily's children, Michael C. Daily ("Michael") and Terri Daily Wilcox ("Terri"). Plaintiff's amended complaint alleges that Sammy Daily and his wife Margaret transferred "all or substantially all" of the stock of LDC and LVI to Michael and Terri in February 1983. The transfer of the LDC stock is a matter of serious disagreement. Michael and Terri contend that Daily and his wife never owned the LDC stock, and that the shares were transferred to them by a separate company, Sam Daily Realty, Inc.[5] For purposes of this motion to dismiss, the court assumes the truth of the amended complaint's conclusory allegations.

Plaintiff's amended complaint also alleges that Daily and his wife transferred the stock of LDC and LVI to Michael and Terri for "no consideration or less than reasonably equivalent value and with the effect of hindering, delaying and defrauding Sammy G. Daily's creditors." The complaint does not seek to avoid those transfers. Instead, it seeks a declaration that LDC and LVI are alter egos of Daily and that any money from the sale of the Lilipuna property be held in "constructive trust" for the creditors of Daily's bankruptcy estate. It also seeks an order requiring Title Guaranty to "turnover" to Daily's bankruptcy trustee any money attributable to the sale of the Lilipuna property now being held in an escrow account.

The amended complaint added the shareholders of LDC and LVI as defendants. In addition to Michael and Terri, those defendants include Kevin Thomas Shannon, Frank Blazek, Harvey Hee, and Rania Michiyo Hee. From the amended complaint, it appears that Michael and Terri are the sole shareholders in LDC and the principal shareholders in LVI. The remaining defendants apparently retain few, if any, shares in LVI. Daily himself owned no shares in either corpora-

---

**3.** *See In re Daily*, 107 B.R. 996 (D.Haw.1989) (Pence, J.), *rev'd*, 940 F.2d 1306 (9th Cir.1991). On remand from the Ninth Circuit, the Bankruptcy Court held that the trustee's adversary complaint was a non-core proceeding, and referred the case to this court. Pursuant to 28 U.S.C. § 157(c)(1), this court designated Bankruptcy Judge King to hear Defendants' motion to dismiss and to submit proposed findings of fact and conclusions of law.

**4.** A reverse alter ego claim, also known as "reverse piercing the corporate veil," involves a "corporate insider, or someone claiming through such individual, attempting to pierce the corporate veil from within so that the corporate entity and the individual will be considered one and the same." 1 Fletcher Cyclopedia of Corporations,

§ 41.60 (1990 & Supp.1994). The doctrine has been asserted both for the benefit of shareholders and for the benefit of creditors seeking to impose liability for an individual's debts on corporations allegedly owned by that individual. It has been most frequently used by the government in tax evasion cases, in order to reach corporate assets for the obligations of an individual. *Id.*

**5.** Sam Daily Realty, Inc. is also in Chapter 7 bankruptcy proceedings. Daily was the principal shareholder of the realty corporation. If it is indeed true that Sam Daily Realty, Inc., was the previous sole owner of LDC stock, then Plaintiff, as trustee of Daily's *individual* bankruptcy estate, would have no standing to attack transfers from the corporation to Michael and Terri.

tion at the time he filed his bankruptcy petition.

On April 4, 1994, Michael and Terri moved to dismiss or for partial summary judgment as to the claims against them in the amended complaint. The same day, LDC moved to dismiss or for summary judgment as to the claims against it, and additionally moved to remove the "preliminary injunction" freezing the funds in the Title Guaranty escrow account. The court referred the motions to Bankruptcy Judge King, under 28 U.S.C. 157(c)(1).

Judge King's second Report and Recommendation ("Report II") recommended this court grant the motions to dismiss. In brief, Report II concludes:

(1) State statutes of limitations barred Plaintiff from adding Michael and Terri as defendants to the amended complaint. By January 30, 1989, at the latest, Plaintiff knew or should have known about the alleged fraudulent stock transfers, and thus the applicable statute of limitations expired in early 1991—more than three years before the amended complaint was filed. The amended complaint did not "relate back" to the date of the original complaint, because there was no mistake as to the identity of the parties, and the doctrines of "equitable tolling" and "virtual representation" could not save Plaintiff;

(2) Plaintiff's attempt to state a claim based on reverse alter ego must fail, because no such claim has been or is expected to be recognized in Hawaii state courts. Moreover, even if such a claim might be recognized in general terms, it could not be made in this case because: a) Daily, the individual debtor whose debts would be paid from corporate assets, owns no shares of either LVI or LDC; and b) Michael and Terri, who effectively own all the shares of LVI and LDC, cannot be named parties to the amended complaint because of the statute of limitations; and

(3) The amended complaint fails to state a claim for imposing a constructive trust under Hawaii law.

In addition to recommending that the amended complaint be dismissed, with prejudice, as to Michael, Terri, and LDC, Report II also recommends dissolving the injunction enjoining distribution of monies in the escrow account and dismissing Title Guaranty as a defendant. Finally, Report II notes that its reasoning with regard to Michael and Terri applies equally to the other newly-named, individual defendants (Shannon, Blazek, and the Hees), and suggests this court order Plaintiff to proceed or dismiss as to those remaining defendants within a fixed period of time.

Plaintiff makes three general objections to Report II. In summary, Plaintiff argues:

(1) That applicable federal and state law allow a bankruptcy trustee for an individual debtor to institute reverse alter ego claims on behalf of the debtor's estate for the benefit of its creditors. Specifically, Plaintiff contends that a bankruptcy trustee has standing to assert such a claim, despite seemingly contrary Ninth Circuit precedent, and that Hawaii state courts would "follow the prevailing trend in the law" and recognize the doctrine of reverse piercing a corporate veil;

(2) that a corporation's individual shareholders need not be named as parties in an action to reach the corporation's assets through reverse alter ego; and

(3) that the July 7, 1989, injunction be continued, presumably pending an appeal, in order to maintain the escrow account intact until there is a final judgment on the merits.[6]

### STANDARD OF REVIEW

After considering the bankruptcy court's proposed findings and conclusions, the district court reviews *de novo* those matters to which any party has timely and specifically objected. 28 U.S.C. § 157(c)(1). *In re Mann*, 907 F.2d 923, 926 (9th Cir.1990). The district court may accept, reject or modify the proposed findings of fact and conclusions of law. Fed.R.Bkrtcy.P. 9033.

---

6. Defendant LDC's response to Plaintiff's objections includes a request for Rule 11 sanctions against Plaintiff. Such a request is outside the scope of this court's review of Judge King's Report and Recommendation under 28 U.S.C. § 157(c)(1).

## DISCUSSION

### I. Statute of Limitations Timebar

Plaintiff does not specifically object to Report II's conclusion that the applicable statutes of limitations bar Plaintiff from adding Michael and Terri as defendants to the amended complaint. This court, having reviewed the authorities cited in that portion of Report II, adopts the finding that Plaintiff is time barred from adding Michael and Terri as defendants. Report II, at 5–14.

### II. Plaintiff's Standing to Assert Alter Ego Claim

█ Plaintiff's initial objection focuses on an issue that has provoked considerable comment and confusion among courts and scholars.[7] Generally, the question is whether a bankruptcy trustee, who is himself an alter ego, has standing to assert an alter ego claim against non-bankrupt third parties. At issue here is a single sentence in a Ninth Circuit opinion:

> [N]o trustee ... has the power under ... the Code to assert general causes of action, such as [an] alter ego claim, on behalf of the bankrupt estate's creditors.

*Williams v. California 1st Bank*, 859 F.2d 664, 667 (9th Cir.1988) (emphasis in original) (quoting from *In re Ozark Restaurant Equipment Co.*, 816 F.2d 1222, 1228 (8th Cir.), *cert. denied*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987)). The position taken by the *Williams* and *Ozark* courts regarding a trustee's lack of standing to assert creditors' claims appears to be the minority rule among the federal circuits. *See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 696–701 (2d Cir.1989) (citing cases).

In arguing that Daily's trustee has standing to bring an alter ego claim in the Ninth Circuit, Plaintiff cites three recent cases that distinguish or reason around *Williams'* seemingly clear statement of law. *Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130 (2d Cir.1993); *In re Davey Roof-*

*ing*, 167 B.R. 604 (Bkrtcy.C.D.Cal.1994); and *In re Towe*, 173 B.R. 197 (Bkrtcy.D.Mont. 1994). Both *Kalb, Voorhis* and *Davey* declare that *Williams'* statement that a bankruptcy trustee lacks standing to assert an alter ego claim for creditors is "clearly dicta, because it goes beyond the facts of the case." *Kalb, Voorhis*, 8 F.3d at 134; *Davey* 167 B.R. at 607.

Plaintiff's argument also relies heavily on *Towe*, a recent Montana bankruptcy court decision. *Towe* similarly limits *Williams* to its facts, and then distinguishes "personal claims of creditors" (which a trustee has no standing to bring) from "allegations that could be asserted by any creditor" (which a trustee may bring as a representative of all creditors). *Towe*, 173 B.R. at 200. In so doing, *Towe* cites from the line of cases that has held directly contrary to *Ozark* and *Williams*. *See, e.g., Koch Refining v. Farmers Union Central Exchange*, 831 F.2d 1339 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). Not surprisingly, *Towe* then finds a bankruptcy trustee has standing to assert an alter ego claim. *Towe*, 173 B.R. at 201. It is important to note that the bankruptcy court decision *Towe* principally relies upon, *In re Western World Funding, Inc.*, was decided *before Williams* was handed down. In fact, the district court which reviewed the bankruptcy judge's decision in *Western World Funding reversed* the decision in part because the district court believed that the Ninth Circuit's intervening order in *Williams* expressly barred a trustee's alter ego action under 11 U.S.C. § 544(a). *In re Western World Funding, Inc.*, 52 B.R. 743 (Bkrtcy.D.Nev. 1985), *aff'd in part and rev'd in part* sub. nom. *Buchanan v. Henderson*, 131 B.R. 859 (D.Nev.1990), *rev'd on other grounds*, 985 F.2d 1021 (9th Cir.1993).

It is true that *Williams* involved not an alter ego claim but rather a trustee's lawsuit on behalf of the estate and its creditors against a bank that allegedly participated in

---

7. See, e.g., Stephen Boyce, *Koch Refining and In re Ozark: The Chapter 7 Trustee's Standing to Assert an Alter Ego Cause of Action*, 64 Am. Bankr.L.J. 315 (1990); John Wilmore, *The Bankruptcy Trustee: Can an Alter Ego Sue in Alter*

*Ego*, 65 S.Cal.L.Rev. 705 (1991); Mark Prager & Jonathan Backman, *Pursuing Alter Ego Liability Against Non–Bankrupt Third Parties: Structuring a Comprehensive Conceptual Framework*, 35 St. Louis U.L.J. 657 (1991).

the debtor's Ponzi scheme. However, this court is not inclined to dismiss the Ninth Circuit's analysis as dicta. *Williams* obviously endorsed, if not outright adopted, the Eighth Circuit's reasoning in *Ozark. Williams,* 859 F.2d at 666–67 (quoting three times from *Ozark* ). In *Ozark,* the Eighth Circuit carefully analyzed and rejected a bankruptcy trustee's standing to assert an alter ego claim on behalf of the debtor's unsecured creditors under three different areas of the Bankruptcy Code: 11 U.S.C. § 541 (as "property of the estate"); 11 U.S.C. § 544 (the trustee's "strongarm clause"); and 11 U.S.C. § 105 (general equitable principles).[8] Both *Williams* and *Ozark* found it "extremely noteworthy" that Congress considered and explicitly rejected giving a trustee authority to bring suits on behalf of the estate's creditors against third parties. *Ozark,* 816 F.2d at 1227–28 (citing legislative history). Absent a clear statement from the Ninth Circuit, it is imprudent for this court to simply ignore *Williams. See Buchanan v. Henderson,* 131 B.R. 859, 865 (D.Nev.1990), *rev'd on other grounds,* 985 F.2d 1021 (9th Cir.1993) (district court, reviewing bankruptcy court's decision on appeal, holding that bankruptcy court erred in finding that trustee had standing under § 544(a) to assert alter ego claim).

■ Moreover, even if this court assumes that the contested sentence in *Williams* is dicta or limited to that case's facts, Plaintiff is not necessarily entitled to assert his reverse alter ego claim in this case. Under 11 U.S.C. § 541, the property of the bankruptcy estate includes all legal and equitable interests of the debtor at the commencement of the case. Whether rights belong to the debtor or the individual creditors is a question of state law. *Kalb, Voorhis,* 8 F.3d at 131; *Ozark,* 816 F.2d at 1225. The question, then, of whether Daily's bankruptcy trustee has standing to assert a reverse alter ego claim to reach LDC and LVI's assets depends on whether Hawaii state law would permit a shareholder to assert such a claim.[9] *In re Schuster,* 132 B.R. 604, 607–09 (Bkrtcy. D.Minn.1991); *Davey Roofing,* 167 B.R. at 605. For example, the court in *Davey Roofing* granted standing to a corporate bankruptcy trustee only because California state law expressly permitted a corporation to pierce its own corporate veil. *Id.* at 608.

If there is no right to bring a claim under state law, then there is no cause to assert, as the court did in *Towe,* that "only the trustee could prosecute such action to recover assets for the estate." *Towe,* 173 B.R. at 201. Similarly, if this court departs from its reasoning above and assumes that *Williams* does not bar a trustee's alter ego action under 11 U.S.C. § 544, the trustee's standing to assert the strong arm clause depends on the rights of the debtor's creditors under state law. *See, e.g., Western World Funding,* 52 B.R. at 780–83.[10] As the following section demonstrates, Hawaii state courts have not recognized the doctrine of "reverse alter ego" or "reverse piercing" and are not expected to do so.[11]

8. 11 U.S.C. § 541(a)(1) provides that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 544 gives the trustee the rights and powers of a creditor who could have obtained a judicial lien, whether or not such a creditor actually exists, and additionally allows the trustee to avoid certain transfers of the debtor that are voidable under applicable law by a creditor holding an unsecured claim. 11 U.S.C. § 105 enables a bankruptcy court to apply equitable principles which are "necessary or appropriate" in a particular case to carry out provisions of the Bankruptcy Code.

9. As several courts have noted, it initially seems incongruous that the trustee accedes to the remedy as a shareholder, then turns around and uses his predecessor's past misdeeds to invoke an equitable remedy that ultimately benefits that shareholder's creditors. However, the "piercing doctrine is neither innately pro-debtor nor pro-creditor, and the consequence of a loss of corporate assets to a shareholder's creditors, standing alone, does not mean the remedy should not be applied." *Schuster,* 132 B.R. at 611. The trustee's duty, of course, is to maximize the return to the estate through whatever remedies are available. 11 U.S.C. § 704.

10. Those commentators who argue that § 544(a) conceptually allows a trustee's alter ego claim agree that the trustee is granted only "the rights and powers that creditors could have asserted at *state law.*" *See, e.g.,* Boyce, 64 Am.Bankr.L.J. at 320 (emphasis added).

11. The court notes that *if* "reverse alter ego" was to be recognized in Hawaii, the equitable remedy arguably should belong *solely* to those particular

### III. *Hawaii Courts/Reverse Alter Ego*

Hawaii appellate courts have never considered reverse piercing of the corporate veil, not for the benefit of an individual's creditors nor for the benefit of the shareholder himself.[12] The Hawaii Supreme Court has often repeated the "general rule that a corporation and its shareholders are to be treated as distinct legal entities." *Chung v. Animal Clinic, Inc.*, 63 Haw. 642, 645, 636 P.2d 721 (1981); *Waterhouse v. Home Insurance Co.*, 27 Haw. 572, 581 (1923) ("ordinary presumption . . . is that when a corporation has been formed in the manner provided by law, it continues to have existence as a separate and distinct entity"). Hawaii has recognized that the corporate entity may be disregarded to "prevent injustice and inequity," *Kahili, Inc. v. Yamamoto*, 54 Haw. 267, 271, 506 P.2d 9 (1973), but Hawaii appellate courts historically have been reluctant to pierce the corporate veil. *See Evanston Ins. Co. v. Luko*, 7 Haw.App. 520, 525, 783 P.2d 293 (1989); *State v. Yamada & Sons, Inc.*, 59 Haw. 543, 546, 584 P.2d 114 (1978); *Tropic Builders v. Naval Ammunition Depot*, 48 Haw. 306, 324, 402 P.2d 440 (1965). Indeed, in 1981, the last time the Hawaii Supreme Court addressed the issue, it declined to expand the alter ego doctrine. *Chung*, 63 Haw. at 646, 636 P.2d 721 (holding that exclusive stock ownership and control is not determinative of whether the corporate entity should be disregarded). Because of this history, and because alternative remedies such as avoidance of fraudulent conveyances, conversion and reaching principals through agents are already available in Hawaii courts, the court agrees with Bankruptcy Judge King that the Hawaii Supreme Court would not create a "new" cause of action in the form of reverse alter ego.

This court also concurs with Judge King that Hawaii state courts would share the concerns expressed in *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557 (10th Cir.), *cert. denied*, 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990). In *Cascade*, the Tenth Circuit refused to allow a reverse alter ego claim where the state courts of Utah had not expressly approved of such a cause of action. The *Cascade* court noted that the reverse alter ego theory bypasses normal judgment collection procedures, and, "to the extent that the corporation has other non-culpable shareholders, they obviously will be prejudiced if the corporation's assets can be attached directly." *Cascade*, 896 F.2d at 1577.

While there certainly were many more "innocent" shareholders in *Cascade* than in this case, Michael and Terri (the majority if not sole shareholders of LVI and LDC) face substantial prejudice if the corporate veils of LVI and LDC are pierced because of the alleged misconduct of their father, Daily. As previously discussed, Michael and Terri cannot be made parties to this action, and therefore cannot directly defend their interests against Plaintiff's charges. If Plaintiff succeeds here and the escrow funds are turned over to Daily's estate, the value of Michael and Terri's shares will effectively be wiped out. Plaintiff argues that Michael and Terri cannot be considered "non-culpable" shareholders, because they and Daily are members of the same family and the shares were improperly transferred for little or no consideration. Even assuming the truth of Plaintiff's allegations, Michael and Terri indisputably hold a legal interest in the LDC and LVI stock, and are entitled to defend that interest at least until a court rules that Daily is the equitable owner of the shares.[13]

creditors who were misled or damaged by the shareholder's fraudulent or inequitable conduct. *Cf. Ozark*, 816 F.2d at 1225 (alter ego claims belong solely to third-party creditors under Arkansas law). Applying this reasoning, the "real party in interest" here would be only those creditors, and Plaintiff would be barred from asserting the creditors' personal claims under *Williams* and *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). For purposes of this motion to dismiss, however, the court examines Hawaii law to determine if anyone, creditor or shareholder, could

assert a reverse alter ego claim under state law. *See, e.g., Schuster*, 132 B.R. at 610 (reviewing various applications of doctrine).

**12.** All the reported Hawaii cases involve "conventional" alter ego claims, in which a creditor seeks to impose liability for a corporation's debts on one or more of the corporation's individual shareholders.

**13.** Plaintiff mischaracterizes Bankruptcy Judge King's report when he implies that Judge King recommended that this action must be dismissed

■ Most damaging to Plaintiff's argument is the simple fact that at the time Daily filed his bankruptcy petition, he owned *no* shares in either LDC or LVI. Reverse alter ego is an equitable doctrine; it stretches the imagination, not to mention the equities, to conceive of how someone wholly outside the corporation may be used to pierce the corporate veil from within. Hawaii courts have indicated that stock ownership is a necessary element for a conventional alter ego action. *Luko,* 7 Haw.App. at 525, 783 P.2d 293 (holding corporate veil cannot be pierced because there was no evidence defendants were shareholders). It seems likely that Hawaii courts would impose the same requirement for a reverse alter ego claim.[14] Moreover, one of the cases relied on by Plaintiff expressly states that a bankruptcy trustee could not maintain a reverse alter ego claim unless the individual debtor held a stock ownership interest in the corporation. *Schuster,* 132 B.R. at 608.

Plaintiff cites several bankruptcy court decisions in support of his contention that Daily need not be a shareholder, but only one of the cases involves a trustee's reverse alter ego action through an individual debtor. *Towe,* 173 B.R. at 212. *Towe* is factually distinguishable, in that the debtor there was the controlling shareholder before he gave away the stock, whereas here there is no evidence Daily ever owned *any* shares of LDC before the stock was sold to Michael

and Terri. Even assuming Daily controlled the stock before it was transferred twelve years ago, the court believes in light of Hawaii law that the proper approach is the one taken by the Fifth Circuit in *Zahra Spiritual Trust v. United States,* 910 F.2d 240 (5th Cir.1990). The court in *Zahra* refused to allow a reverse alter ego claim because (like Hawaii) no Texas cases had imposed liability on a conventional alter ego claim when the individual owned none of the corporate stock. *Id.* at 245. Given *Luko* and other Hawaii decisions, this court agrees that Hawaii courts "will not treat a corporation and an individual as one and the same unless the individual has some ownership interest in the corporation." *Zahra,* 910 F.2d at 246.

Apparently realizing his weakness under Hawaii law, Plaintiff insists that the "prevailing trend" is for bankruptcy courts to recognize reverse alter ego claims even in jurisdictions where the state courts have not adopted the doctrine.[15] *In re Elkay Industries, Inc.,* 167 B.R. 404 (D.S.C.1994); *In re Richels,* 163 B.R. 760 (Bkrtcy.E.D.Va.1994); *In re Mass,* 166 B.R. 595 (Bkrtcy.M.D.Pa. 1994). Significantly, in each of those cases the debtor owned at least half of the corporation's stock. Additionally, this court shares the concerns of Bankruptcy Judge King:

> Since the avoiding powers of a trustee in bankruptcy, even those which rely on state law, are created by the Bankruptcy Code, *see, e.g.,* §§ 544–49, cases allowing a trust-

because Michael and Terri are "indispensable parties." Rather, the point is that Hawaii courts—historically protective of the separation between a corporation and its shareholders—would be particularly unlikely to recognize a reverse alter ego claim where *none* of the shareholders could be named as defendants because of Plaintiff's inexcusable neglect in failing to comply with the statute of limitations.

14. The leading authority on corporation law appears to assume that shareholding is a necessary element for reverse alter ego in those jurisdictions where it has been recognized. 1 Fletcher Cyclopedia of Corporations § 41.70 (1990 & Supp.1994) ("Where a creditor proves that *controlling shareholders* organized or used the corporation to deceive or defraud personal creditors, the separate existence shall be disregarded and the *corporation and the shareholders* will be treated as one and the same.") (emphasis added).

15. Plaintiff also cites a recent Ninth Circuit tax case, *Towe Antique Ford Foundation v. Internal Revenue Service,* 999 F.2d 1387 (9th Cir.1993), which allowed the I.R.S. to make a reverse alter ego claim even though Montana state courts had yet to recognize the doctrine. Rather than conclusively demonstrating a liberal application of causes of action not clearly established under state law, *Towe Antique* arguably reflects appellate courts' greater tolerance for the government's efforts to collect revenues from tax evaders who hide assets. *See, e.g., Shades Ridge Holding Co., Inc. v. United States,* 888 F.2d 725, 729 (11th Cir.1989). Although it is not clear from the opinion, it appears the Ninth Circuit decided from a review of Montana cases that the Montana Supreme Court would permit such a reverse piercing claim. *Towe Antique,* 999 F.2d at 1390–92. By contrast, in this case Bankruptcy Judge King recommended, and this court agrees, that Hawaii courts likely would *not* establish reverse alter ego as a new cause of action.

ee in bankruptcy to pursue reverse alter ego claims, *without a state law basis,* must be viewed with caution.

Report II, at 21 (emphasis added).

To summarize, while Plaintiff offers a plethora of cases in support of bits and pieces of his claim, he cites no authority that would allow a bankruptcy trustee to assert a reverse alter ego claim through the estate of an individual debtor where (1) the individual debtor owned *no* stock in the corporation to be pierced; (2) *none* of the corporation's shareholders are allowed to defend the claim; and (3) state law has not recognized the reverse alter ego doctrine and is not expected to do so. Under these admittedly unusual circumstances, this court will not apply the theory here.

### IV. *Virtual Representation*

Plaintiff argues that Michael and Terri need not be named as defendants in this action because of the principle of "virtual representation." He contends that Michael and Terri have been "virtually represented" from the outset of this case by LDC and LVI, and as shareholders they may have had an affirmative duty to intervene in this suit to protect their rights. The argument amounts to little more than a play on words.

■■■ Virtual representation, as defined by the Ninth Circuit, is a corollary principle to collateral estoppel and res judicata. A person technically not a party to a prior action may be bound by the prior decision if his interests are so similar to a named party's that that party was his "virtual representative" in the prior action. *United States v. Geophysical Corp. of Alaska,* 732 F.2d 693, 696 (9th Cir.1984). One who is not a party of record may be bound if he had a sufficient interest and participated in the prior action. *United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir.1980).

In Plaintiff's case, there is no "prior action" at issue, and the principles of collateral estoppel are premature, if not irrelevant. Theoretically, Plaintiff may seek to invoke the concept of virtual representation at some time in the future if he wants to bind Michael and Terri to a final decision in this case. For now, the virtual reality for Plaintiff is he should have named Michael and Terri as defendants five years ago.

### V. *Dissolution of Injunction*

Initially, there is some confusion as to the nature of the September 25, 1992 court order [16] preventing Title Guaranty from disbursing the monies held in the escrow account. LDC calls it a "preliminary injunction" amounting to a prejudgment attachment of LDC's and LVI's assets. Plaintiff's objections refer to it as a "stay order." The order itself is titled "Preliminary Injunction," and since it clearly was issued under principles of Fed.R.Civ.P. 65, this court will treat it as a preliminary injunction.

Plaintiff contends he is entitled to a continuation of the injunction pending appeal and a final judgment on the merits. In support he cites Fed.R.Civ.P. 62(d) and a line of cases following *DeBeers Consolidated Mines v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). Plaintiff makes no effort to distinguish those authorities which state flatly that a preliminary injunction cannot survive a final order of dismissal. *Cypress Barn, Inc. v. Western Electric Co.,* 812 F.2d 1363, 1364 (11th Cir.1987); *Venezia v. Robinson,* 16 F.3d 209, 211 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 71, 130 L.Ed.2d 26 (1994). *See also* 7 Moore's Federal Practice, ¶ 65.07 at 65–144 (1994) ("A preliminary injunction is *ipso facto* dissolved by a dismissal of the complaint or the entry of a final decree in the cause.")

■■■ However, under Fed.R.Civ.P. 62(c), when an appeal is taken from an interlocutory or final judgment dissolving an injunction, the court in its discretion may suspend, modify, restore or grant an injunction during pendency of the appeal under terms the court considers proper to secure the rights of the adverse (non-appealing) party. This court construes Plaintiff's objection as

---

**16.** The order was first issued on July 7, 1989, and continued in September 1991 and September 1992.

an application to continue the injunction pursuant to Rule 62(c). Rule 62(c) expresses the "power inherent in the court to preserve the status quo where, in its sound discretion, the court deems the circumstances so justify." *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir.1982). The criteria to be used in determining whether a court should grant an application under Rule 62(c) are much the same as for a preliminary injunction. *See Tribal Village of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir.1988); *Nevada Airlines, Inc. v. Bond*, 622 F.2d 1017, 1018 n. 3 (9th Cir.1980).

In the Ninth Circuit, a party seeking injunctive relief must meet one of two tests:

Under the first, a court may issue a preliminary injunction if it finds: (1) the moving party will suffer irreparable injury if the injunctive relief is not granted; (2) the moving party will probably prevail on the merits; (3) in balancing the equities, the non-moving party will not be harmed more than the moving party is helped by the injunction; and (4) granting an injunction is in the public interest.

Alternatively, a court may issue a preliminary injunction if the moving party demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. Under the last part of the alternative test, *even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.*

*Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir.1994) (emphasis added). Under the latter test, the formulations represent two points on a "single continuum," such that "if the balance of harm tips decidedly toward plaintiff, the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Ralph Rosenberg Court Reporters, Inc. v. Fazio*, 811 F.Supp. 1432, 1435 (D.Haw.1993) (Ezra, J.) (citing *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir.1988)).

Plaintiff argues that he would suffer irreparable harm because the release and ultimate distribution of the escrow funds to LDC and LVI's stockholders would render defendants LDC and LVI insolvent and unable to satisfy any subsequent judgment. Plaintiff also contends that he would be required to "pursue multiple transferees in order to recover funds prematurely disbursed," citing *Lynch Corp. v. Omaha National Bank*, 666 F.2d 1208 (8th Cir.1981). In this case, there are only two stockholders, both of whom are well known to Plaintiff. The possibility of one or two additional lawsuits to recover funds is not the sort of burden or hardship necessary to support continuing an injunction.

As for Plaintiff's argument that LDC and LVI would become insolvent, the general rule is that injunctive relief is not appropriate when money damages are an adequate remedy at law. *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1395 (9th Cir.1984) (injunction improper even though plaintiff claimed threatened transfer of assets would render any money judgment ineffectual). Economic loss is rarely irreparable injury for purposes of an injunction. *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850 (9th Cir.1985). Historically, courts have been wary of allowing a plaintiff in a damages action to obtain an injunction sequestering his opponent's assets. *De-Beers*, 325 U.S. at 222–23, 65 S.Ct. at 1135.

Plaintiff relies heavily on a recent Ninth Circuit decision, *In re Estate of Ferdinand Marcos Human Rights Litigation*, 25 F.3d 1467 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 879 (1995). Following a lengthy discussion of Supreme Court precedent, *Marcos* held:

[A] district court has authority to issue a preliminary injunction where the plaintiff can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.

*Marcos*, 25 F.3d at 1480. The *Marcos* court undoubtedly was influenced by the horrific facts surrounding former Philippines Presi-

848

dent Marcos' alleged human rights abuses; indeed, the court stressed that its holding was limited to "only extraordinary cases" in which a plaintiff is primarily seeking money damages rather than injunctive relief. *Id.*

While the facts in this case are not nearly so dramatic, they do demonstrate an "impending insolvency" of LDC and LVI if escrow is released and the monies distributed to shareholders. Both LDC and LVI hold a single asset: the right to the Lilipuna sales proceeds now held by Title Guaranty. Both LDC and LVI have been non-operating corporations for several years, with no other apparent source of income to satisfy any future judgment against them. Therefore, under a broad reading of *Marcos,* it appears Plaintiff has established the sort of harm necessary to support a preliminary injunction. Viewed under the alternative test, the balance of hardships tips in favor of Plaintiff. The court recognizes that LDC, LVI, and their stockholders have been waiting more than five years for their share of the Lilipuna sale, but the funds remain safe in escrow, continue to earn interest, and any future judgment for Plaintiff likely would be uncollectible if the funds are released.

■■■ Nonetheless, there is yet a critical difference between *Marcos* and this case. In *Marcos,* the district court had found a "substantial likelihood" that plaintiffs would succeed on the merits, and in fact by the time the Ninth Circuit considered the injunction plaintiffs had prevailed on liability and been awarded substantial exemplary damages. *Id.* By contrast, here there is no substantial likelihood or probability that Plaintiff will prevail on the merits, given that Plaintiff has failed to survive a motion to dismiss. Even if the balance of hardships tips decidedly in favor of Plaintiff, he must show "as an irreducible minimum that there is a fair chance of success on the merits." *Martin v. International Olympic Committee,* 740 F.2d 670, 674 (9th Cir.1984). In this case Bankruptcy Judge King has recommended, and this court concurs, that Plaintiff has no chance of success as a matter of law. It is doubtful that Plaintiff has standing to assert an alter ego claim under *Williams,* and even if *Williams* is disregarded, Hawaii state courts would not

recognize a reverse alter ego claim under these facts. Because Plaintiff has not shown a probability or even a "fair chance" of success on the merits, his request to continue the injunction pending appeal and a final judgment on the merits must be denied. *Martin,* 740 F.2d at 675–77 (no fair chance of success on the merits where state law would not accommodate plaintiff's claim).

■■■ However, in light of the aforementioned potential hardships to Plaintiff, the court will exercise its discretion under Rule 62(c) to extend the injunction for *Thirty (30 )* days beyond the date of entry of this order. The extension is for the sole purpose of giving Plaintiff time to seek an emergency order from the Ninth Circuit under Rule 62(g) extending the injunction pending appeal. If no such order extending, granting or restoring the injunction is received within the 30–day period, the injunction will be dissolved.

## CONCLUSION

For the reasons stated above, the court orders that Plaintiff's first amended complaint shall be dismissed, with prejudice, as to moving Defendants Michael C. Daily, Terri Daily Wilcox and Lilipuna Development Corp. The preliminary injunction enjoining distribution of the Lilipuna sales proceeds now held by Title Guaranty Escrow Service, Inc., shall be dissolved 30 days after entry of this order, unless Plaintiff obtains an emergency order from the Ninth Circuit continuing the injunction. When the injunction is dissolved, stakeholder Title Guaranty shall be dismissed as a defendant. The reasoning of this opinion applies equally to the nonmoving defendants, and the court adopts Bankruptcy Judge King's recommendation that Plaintiff be ordered to either proceed or dismiss as to the remaining defendants within 90 days from the date of this order.

IT IS SO ORDERED.