**In re VF BRANDS, INC.,
et al., Debtors.**

**VFB L.L.C., Plaintiff,**

**v.**

**The Money's Trust, Defendant.**

**Bankruptcy Nos. 01–285(MFW)
to 01–292(MFW).
Adversary No. 02–02977(MFW).**

United States Bankruptcy Court,
D. Delaware.

July 25, 2002.

---

Tobey M. Daluz, Esquire, Jan A.T. van Amerongen, Jr., Esquire, Reed Smith, LLP, Wilmington, DE, Samuel M. Stricklin, Esquire, Neligan Stricklin, LLP, Dallas, TX, for the Trustee of The Money's Trust.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Emergency Motion of VFB L.L.C. ("VFB"), the successor in interest to VF Brands, Inc., Vlasic Foods International, Inc. ("VFI"), and certain of their affiliates (collectively "the Vlasic Debtors") for a stay pending appeal of our Order dated June 14, 2002, denying its motion for an injunction. For the reasons stated below, we deny the Motion.

## I. FACTUAL BACKGROUND

In 1997 and 1998, Campbell Soup Company ("Campbell") spun off various business operations, thereby creating the Vlasic Debtors. As a result of the spin-off, Vlasic Farms, Inc. ("Vlasic Farms") became a wholly-owned subsidiary of VFI. Subsequently, pursuant to a Stock Purchase Agreement dated December 17, 1999, Money's Foods (U.S.) Ltd. and Money's Mushrooms Ltd. purchased all the stock of Vlasic Farms from VFI for $50 million.

On November 2, 2000, Money's Foods (U.S.) Ltd. and certain of its affiliates ("the Money's Foods Debtors") filed petitions under Chapter 11 of the Bankruptcy Code. On January 29, 2001, the Vlasic Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On July 25, 2001, the Court confirmed the

Sally McDonald Henry, Esquire, Frederick Morris, Esquire, Skadden Arps Slate Meagher & Flom, LLP, New York City, Anthony W. Clark, Esquire, Robert A. Weber, Esquire, Skadden Arps Slate Meagher & Flom, LLP, Wilmington, DE, for Debtors.

Michael R. Lastowski, Esquire, Duane Morris & Heckscher, LLP, Wilmington, DE, Mitchell A. Seider, Esquire, Kramer Levin Naftalis & Frankel, LLP, New York City, for the Official Committee of Unsecured Creditors.

Andre G. Bouchard, Esquire, Bouchard Margules & Friedlander, Wilmington, DE, Peter S. Goodman, Esquire, Andrews & Kurth, LLP, New York City, for VFB, LLC.

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

liquidating plan of reorganization of the Money's Foods Debtors, pursuant to which Money's Trust was created to pursue claims of the Money's Foods estate. On November 16, 2001, the Court confirmed the Vlasic Debtors' Plan of Reorganization pursuant to which shareholders will receive no distribution ("the Vlasic Plan"). VFB is the successor to the Vlasic Debtors pursuant to the Vlasic Plan.

On October 9, 2001, Money's Trust filed its amended proof of claim against the Vlasic Debtors. That claim is based on asserted breaches of the Stock Purchase Agreement and an assertion that the Stock Purchase Agreement was itself a fraudulent conveyance which rendered the Money's Foods Debtors insolvent. The Vlasic Debtors objected to the claim and asserted that the claim must be subordinated and treated as a shareholder claim pursuant to section 510(b). A hearing was held on March 14, 2002, on the subordination issue. After briefing, we issued an Opinion and Order dated April 12, 2002, determining that the claim of Money's Trust must be subordinated pursuant to section 510(b).

In the interim, on November 14, 2001, Money's Trust filed an adversary proceeding ("the Money's Trust Litigation") in its bankruptcy case against The Chase Manhattan Bank ("Chase") and Morgan Guaranty Trust Company of New York ("Morgan Guaranty") (collectively "the Banks"). That Complaint asserted that Money's Foods received less than a reasonably equivalent value when it paid $50 million for the acquisition of Vlasic Farms. The Complaint further asserted that the purchase price paid for the acquisition was transferred to the Banks. Consequently, the Complaint asserted that the transfer of the purchase price from Money's Foods to the Banks is avoidable as a fraudulent conveyance. The Banks have contested the allegations in the Complaint. The Complaint is currently scheduled for trial on August 22, 2002.

On April 19, 2002, VFB filed the instant adversary proceeding seeking an order enjoining the prosecution of the Money's Trust Litigation. A Motion for a Temporary Restraining Order and Preliminary Injunction ("the Injunction Motion") was also filed that same date. A hearing on the Injunction Motion was held on May 15, 2002. At that time, after hearing testimony and argument, we denied the Injunction Motion.[2]

VFB appealed the June 14 Order and filed a Motion with the District Court seeking a stay pending appeal. By Memorandum Order dated July 18, 2002, the District Court denied the Motion, without prejudice to VFB's right to renew the Motion, and directed that VFB first seek such relief from this Court in accordance with Federal Rule of Bankruptcy Procedure 8005. The District Court also sought clarification about the basis of our decision denying the Injunction Motion since there was apparently a disagreement between the parties on this point. Presently before us is the Emergency Motion of VFB for a stay of our June 14 Order pending appeal.

## II. JURISDICTION

This Court has jurisdiction over this Motion, which is a core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A), (B), and (O).

## III. DISCUSSION

■ A stay of an order granting or denying an injunction pending appeal is gov-

---

**2.** We issued our ruling on the record and directed counsel to present a form of order memorializing our ruling. It was not until June 12, 2002, that the parties presented a form of order. That Order was entered on June 14, 2002.

erned by Rule 62 of the Federal Rules of Civil Procedure, made applicable by Rule 7062 of the Federal Rules of Bankruptcy Procedure. Rule 62(c) provides in relevant part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Fed.R.Civ.P. 62(c).

Rule 62(c) expresses the "power inherent in the court to preserve the status quo where, in its sound discretion, the court deems the circumstances so justify." *Estate of Daily v. Title Guar. Escrow Serv., Inc.*, 178 B.R. 837, 847 (D.Haw.1995) (*quoting McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir.1982)).

■ The standards for granting a stay pending appeal are:

1) the likelihood that the appellant will prevail on the merits of the appeal;

2) the extent to which the appellant will be irreparably harmed if the stay is denied;

3) the extent to which the other parties will suffer irreparable harm if the stay is granted; and

4) the public interest.

*See, e.g., In re X–Cel Constructors of Del., Inc.*, 76 B.R. 969, 970 (D.N.J.1987) (*citing West Indian Co., Ltd. v. Gov't of Virgin Islands*, 812 F.2d 134, 135 (3d Cir.1987); *Hoekstra v. Oak Cluster Comty. Council (In re Hoekstra)*, 268 B.R. 904, 906 (Bankr. E.D.Va.2000); *In re Brookfield Ctr. Ltd. P'ship*, 133 B.R. 74, 75 (Bankr.E.D.Va. 1991)).

■ These standards are the same as those required for issuance of an injunction. *See, e.g., Pitt News v. Fisher*, 215 F.3d 354, 365–66 (3d Cir.2000); *Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431, 1438 (3d Cir.1994); *Merchant & Evans, Inc. v. Roosevelt Bldg. Products Co.*, 963 F.2d 628, 632 (3d Cir. 1992); *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 191–92 (3d Cir.1990).

In deciding the Injunction Motion, we considered the above factors and determined that they did not warrant the issuance of an injunction. For the same reasons, we conclude that the issuance of a stay pending appeal is not warranted. To aid consideration of the appeal, we explain our reasons more fully below.

### A. *Likelihood of Success on the Merits*

■ VFB's Complaint asserted that the Money's Trust Litigation should be enjoined because it was an effort to alter the status of the Money's Trust claim under the Vlasic Plan, which we had determined was subordinated under section 510(b). Under the Vlasic Plan, such claims are to receive no distribution. By filing the Money's Trust Litigation against the Banks, VFB asserts that Money's Trust is seeking to subvert the Vlasic Plan.

We rejected this argument, however, because Money's Trust is simply seeking a recovery from someone whom it asserts is liable to it, in addition to the Vlasic Debtors. This is no different from a creditor who is free to pursue collection of its claim from a guarantor of that debt, even if the primary debtor has discharged the claim in bankruptcy. We noted specifically that the Vlasic Plan did not release the Banks from any direct claims which creditors might have against the Banks. (*Cf.* Plan at Article XII.)[3] Thus, we concluded that,

---

**3.** Of course, it is unclear whether any release of the Money's Trust claim against the Banks

while the Money's Trust claim vis-á-vis the Vlasic Debtors is subordinated under section 510(b), there is nothing that precludes it from seeking recovery on that claim from anyone else.[4]

VFB also asserted that, unless the Money's Trust Litigation is enjoined, there will be an adverse effect on the Vlasic Debtors' ability to effectuate the Vlasic Plan. This is because, to the extent that Money's Trust is successful in that action, the Banks may have a secured claim against the Vlasic Debtors' estate which under the Vlasic Plan must be paid in full. VFB asserted that this, in effect, elevates the Money's Trust claim to a secured (as opposed to a subordinated) claim.

 Even if this is true, however,[5] it does not support an injunction of the Money's Trust Litigation against the Banks. There is no legal basis to enjoin an action which a creditor may have against a non-debtor simply because it may result in an indemnification claim against the debtor or otherwise adversely affect the estate. The effect of granting the injunction requested by VFB would be to grant a release of the claim which Money's Trust may have directly against the Banks. Non-debtors are generally not entitled to releases or discharges of direct claims against them

simply because a co-obligor is in bankruptcy.[6] *See, e.g., Continental Airlines,* 203 F.3d at 211–17.

VFB also asserted that the Money's Trust Litigation should be enjoined because it involves the same issues which are involved in the claim dispute between VFB and Money's Trust. It asserts that collateral estoppel and judicial economy mandate that we enjoin that action until we decide the claim of Money's Trust against VFB. However, principles of judicial economy and collateral estoppel mandate the opposite, namely, that we allow the Money's Trust Litigation to proceed before we determine the amount of the Money's Trust claim against the Vlasic Debtors. Whether Money's Trust wins or loses its suit against the Banks, it is unlikely that it will pursue its claim against the Vlasic Debtors (since that claim is subordinated and entitled to no distribution under the Vlasic Plan).

The converse, however, is not true. If Money's Trust is first required to pursue its claim against the Vlasic Debtors and loses, it would be estopped from proceeding against the Banks. However, if Money's Trust wins in the claim litigation, that decision will not have any collateral estop-

---

could have been issued in connection with confirmation of the Vlasic Plan since such releases are disfavored. *See, e.g., In re Continental Airlines, Inc.,* 203 F.3d 203, 211–17 (3d Cir.2000).

4. In fact, Money's Trust argued that, since the Vlasic Debtors' Plan has been confirmed and the Money's Trust Litigation is solely between two non-debtors, we did not even have jurisdiction to hear VFB's Injunction Motion. *See, e.g., In re Schwinn Bicycle Co.,* 210 B.R. 747, 754 (Bankr.N.D.Ill.1997). VFB argued, however, that we had jurisdiction under 28 U.S.C. § 1334(b) since it was related to the Vlasic Debtors' case. We denied the injunction because, even if we had jurisdiction, the relief requested was not available.

5. *See* Part B *infra.* In addition, Money's Trust argued that any claim of the Banks would be subject to subordination under section 510(b) just as its claim was.

6. VFB's witness acknowledged on cross examination at the hearing on the Injunction Motion that the Banks had not provided any funding for the Vlasic Plan and, in fact, under the Vlasic Plan had been paid 100% of their claims (except for default interest). Therefore, there appears to be no argument for granting a release of claims against the Banks under the Vlasic Plan. Even if there were, the Plan has been confirmed without any such release.

pel effect against the Banks, and Money's Trust would be obligated to try the same case against the Banks. Judicial economy, therefore, mandates that the Money's Trust Litigation proceed first and an injunction of that action is not warranted.

■ VFB also asserted that the Money's Trust Litigation against the Banks should be enjoined because it may result in inconsistent judgments or may, as a practical matter, have collateral estoppel effect against it. Under section 550 of the Bankruptcy Code, in order to recover against a mediate or intermediate transferee, the claimant must establish that the transfer is a voidable fraudulent conveyance vis-á-vis the initial transferee. *See, e.g., In re Slack–Horner Foundries Co.,* 971 F.2d 577, 580 (10th Cir.1992).[7] VFB asserted that it is the initial transferee since the funds which went to the Banks were funds it received in consideration for the transfer of the stock of Vlasic Farms.

Money's Trust argued, however, that their complaint filed in the Money's Trust Litigation alleges that the Banks are the initial transferee since the funds in payment of the stock went directly to the Banks. We need not decide this, however, because we think there is not a likelihood that there will be inconsistent judgments. If VFB does not intervene in the Money's Trust Litigation, it will not be subject to any collateral estoppel effect of any decision in that case and will be free to raise any issue in defense of the Money's Trust claims here. In fact, as noted above, it is unlikely that Money's Trust will pursue the liquidation of its claim in this Court since that claim, whatever its amount, is subordinated to other claims and will receive no distribution in this case.

VFB also argued that such a ruling would make it impossible for it to defend against any claim for indemnification by the Banks. However, since the estate has preserved its right to sue the Banks over the entire Campbell/Vlasic transaction (including on fraudulent conveyance grounds), it is unclear to the Court how a ruling that the Vlasic Farms spin-off was a fraudulent conveyance could adversely affect VFB. In fact, in the suit filed by VFB against Campbell, it asserted that the creation of the entire Bank debt (of $500 million) which was incurred by the Vlasic Debtors in connection with the spin-off was a fraudulent conveyance. A ruling against the Banks in the Money's Trust Litigation may, consequently, be advantageous to VFB.

For all the foregoing reasons, we concluded that VFB did not have a likelihood of succeeding on the merits of its Complaint for an injunction. We similarly conclude it is not likely to succeed on the appeal of our Order denying a preliminary injunction.

#### B. *Irreparable Harm*

VFB asserted that the estate will be irreparably harmed by allowing the Money's Trust Litigation to proceed. It asserted that the indemnification provisions in the credit agreement with the Banks require that it pay for the Banks' defense of that action and that the possibility of an adverse ruling mandates that it participate and assist the Banks in their defense of that action. VFB asserted that if Money's Trust wins and collects from the Banks that the Banks will assert a secured claim against the Vlasic Debtors' estate for the amount of that judgment.

7. The Banks had argued, in a Motion to Dismiss the Money's Trust Litigation, that section 550 required that Money's Trust first sue and win a fraudulent conveyance action against the Vlasic Debtors before it could pursue the Banks as mediate transferees. That argument was rejected when the Motion to Dismiss was denied.

At the hearing on the Injunction Motion, however, VFB's witness acknowledged that the estate may have claims against the Banks in connection with the spin-off of the Vlasic Debtors from Campbell.[8] In fact, the Vlasic Debtors referenced those potential claims in their Disclosure Statement. (*See* Disclosure Statement at p. 16.) VFB's witness was also careful to note that the Vlasic Debtors did not concede that the Banks would have a claim against the estates if the Money's Trust Litigation were successful.

Consequently, we are unable to find that VFB will be irreparably harmed if the Money's Trust Litigation is allowed to proceed.

### C. *Harm to Money's Trust*

The harm to Money's Trust in enjoining it from pursuing its claims against the Banks and forcing it to litigate a claim against VFB is obvious. As noted above, Money's Trust may decide that it is not necessary to litigate the amount of its claim against the Vlasic Debtors since that claim has been subordinated under section 510(b). To force it to do so as a condition to it proceeding against a third party will entail needless cost and delay.

### D. *Public Policy*

We find no public policy considerations applicable.

## IV. *CONCLUSION*

For the foregoing reasons, we deny the Emergency Motion of VFB for a stay pending appeal.

---

**8.** The Vlasic Debtors apparently have sued Campbell's and have not ruled out suing the banks. The estate has been given an extension to September 11, 2002, to bring any such claims.